Good afternoon and welcome to the continuation of our session from Birmingham a couple of weeks ago. We have one case this afternoon, number 22-13124, United States v. Rodolfo Maisonet. We have Ms. Salent here for Mr. Maisonet and Mr. Davies for the government. Ms. Salent, whenever you're ready. Ms. Salent Thank you. May it please the Court, counsel, my name is Megan Salent and I represent Mr. Maisonet. Before I begin, I would just like to thank the Court and opposing counsel again for accommodating our office during Hurricane Helene. With that, I would like to reserve seven minutes of my time for rebuttal. Under a de novo standard of review, this Court should find the District Court erred when it decided as a matter of law that Mr. Maisonet was ineligible for safety valve relief. At sentencing, the District Court plainly stated that Mr. Maisonet had not met the criteria in subsection 5 of 5C1.2a. The Court equated a material omission with an affirmative lie when making this determination, and this was flawed for two reasons. First, assuming a material omission is the same as an affirmative lie, this Court has already held that that is not a disqualifier for safety valve relief in Brownlee. Second, Mr. Maisonet did not make a material omission or an affirmative lie. Mr. Maisonet's proffer occurred 10 months before the crimes that occurred while he was on pre-trial release. So, at that moment, he was not engaged in any new criminal activity, nor is there any evidence that he had the intent to, so he could not have included that in his proffer. Can I ask you to address, so I don't know whether this guy's reverb or what, but so I'm hearing myself. So, I tend to agree with you on your legal point, but I've looked at the transcript, and it looks like the District Court also made a secondary or alternative ruling, and let me just point you, I'm just going to read what the District Court said. It said, after making this legal point, it said, it's just a secondary basis that even though I find you can't retroactively fix the material omission by simply providing a sworn statement, which has been done here, and that's a legal issue, and you can preserve that issue for appeal. Secondarily, I find, as the government suggested, that that statement doesn't fix it because it still doesn't account for all the historical data that relates to information about historic transactions. And then it goes on and talks about that. So, why isn't that secondary alternative ruling, why doesn't that preclude us reversing? Well, I think that the transcript, you know, just before the portion that you read, Your Honor, is the part where he says that this is not determinative of my ruling. So, I think that the court, the most, you know, importantly, the court applied the wrong legal standard. And so, even if we were to review, if the court were to review that decision for clear error, it has to be able to determine that the legal conclusion that the court applied did not infect the factual conclusion that it made in the alternative. Yeah, so it looks like, I mean, and so I get that point about that sort of odd sentence. I'm going to ask the government about that. But it looks like what the district court says, I mean, this court says this, I find, as the government suggested, that the statement doesn't fix it because it still doesn't account for all the historic data that relates to information about historic transactions. Isn't that a finding that is completely separate and apart from this issue about whether you can fix a previous misstatement prior to sentencing? I don't think so, because I had already made the determination that Mr. Masonette was ineligible. And so, this secondary finding was sort of part and parcel with that finding. It wasn't one that the court necessarily thought could stand on its own. If it could, it could have just made that ruling and then we wouldn't have had this issue. I think the court made it clear that that wasn't enough. Okay, so if we were to view, I mean, I just want to make sure I understand your position on this. If we were to view that as an alternative ground, do you have anything to say about that? So, you've kind of said that we shouldn't view it as an alternative ground, but let's just assume that we do view it as an alternative ground. Anything to say about that? Whether that finding that the district court made was clearly erroneous? Well, I would, I do, I have a couple points on that. First, and I'm so sorry, this was not in my brief. I just discovered this this weekend, this case, this court's decision in Brown, which is 934 Federal 3rd 1278 from 2019. And that was similar in that the, in that case, the judge made a decision that a certain base offense level did not apply because of the defendant's theory of the law. And although there was lots of, there was evidence of another, to support that in another way, this court said that it could not separate those two things, that the legal conclusion infected the factual finding. So, that would be one thing. I would also point out that the government did not, the only thing, the only evidence that Mr. Masonette had omitted information was based on statements from the government. So, I would say that it seems to me that the government didn't meet their burden on the truthfulness issue, which may have been why the court didn't think that it was determinative. But didn't he fail to provide information about his source of supply for the later transactions? No, I believe this, I believe in his letter, excuse me, he said it was the same source of supply. Now, the government speculated that there were other factors that he left out, but they didn't demonstrate that those were factors that he was aware of or knew of. It was just more information that they wished he had had. What about the issue concerning his relative? Um, I'm sorry. I thought there was a belief on the part of both the government and the district court, and I know you've challenged the district court's alternative finding, but I thought there was some sort of suggestion that he had refused or declined to talk about his relative, I think it was in the transactions. Oh, I'm not aware of that, your honor. I don't remember seeing that in any of the record. Oh, go ahead, Judge Jordan. No, no, you go ahead. You go ahead. Well, I was just going to follow up. So, as part of the same colloquy that Judge Brasher was to you earlier, when the district court says, you know, what I find here is that Mr. Maisonette, dot, dot, dot, we still don't have through the profit with the government, the federal government in this case, a full historical rundown about everything that happened at that address. What they discovered through the post office and so forth, that there were others. Are those the items that the government claims here on appeal were not properly disclosed? It's cryptic. I understand, like, it's cryptic. It's an oral colloquy, so it's necessarily kind of cryptic. But those sound like they match up with the things that the government says were not disclosed. The post office bit and the others. Yeah, the others' participation generally, whoever it was, cousin or otherwise. Right. And I don't think that, again, I don't think that those statements are enough for the court to have relied upon them. There's there's no there's no reason to assume that Mr. Masonette was was involved in those. And he, you know, when he admitted when he admitted to the the two offenses later on, the government, as far as I can tell, the government didn't know about one of them. So I don't know why he would admit to two and not three. I just don't think there's enough evidence for the court to make that finding. All right. I will save the rest for my rebuttal. Thank you. All right. Thank you very much. Hey, Mr. Davies, whenever you're ready. Yes, your honor. Thank you. Good morning. May it please the court. Robert Davies for the United States. A very important factor in this case is that the he has to do a tremendous amount and he has to prove he did a tremendous amount to receive the safety valves benefit. And he did not meet his burden of proof. And before I get into that, let me just first go to what Judge Brasher first talked about was the district court did make two findings. The district court found he was not entitled to safety valve relief because he continued to distribute cocaine after he pled guilty and only told the government about that once he was caught, which you indicated you had some trouble with Judge Brasher. But then the district court made a second finding, which was that the defendant was not entitled to safety valve relief because he did not tell the government about all the information he had he had concerning his crime and relevant conduct. And the district court's first finding is at page 17 to 22 and at page 33 of the sentencing transcript. The second finding is at pages 28 to 34 of the sentencing transcript. And by my count, the district court made its finding that he was not entitled to safety valve relief because he didn't provide all the information. By my count, the district court made that finding four times. The first finding is at page 28 and it's quoted at page 12 of my brief. The second finding is at page 30 and it's quoted at pages 12 going into page 13 of my brief. The third finding is what Judge Newsom was reading, which is at page 33, which is at page 13 of my brief. And then the fourth finding, which I didn't discuss in my brief, is at the bottom of page 33. The district court stated, secondarily, I find, as the government suggested, that statement doesn't fix it because it still doesn't account for all the historic data that relates to information about historic transactions. So there were two findings. And with regard to the statement about it not being determinative, the district court said that, but then it said its secondary ruling provided a secondary basis for why it denied safety valve relief. And if you look overall, like I said, the district court said it four times. And when the district court is saying that its second ruling was not determinative, it's because it was an alternative. Either one ruling, the district court made two rulings, and you can affirm the district court for either basis. So just so I understand, you read the word determinative there from the district court to mean this isn't conclusive as to my ruling because I've got multiple rulings going on here? Is that what you're, I've got multiple holdings going on here? Yes, sir. That's correct. And I base that. Let me ask you this, because this is something just I'm having trouble with and understanding this case. How, how should we interpret the district court's oral statements here? Like what we're obviously reviewing this on the fact findings for clear error. But the question about whether a district court has made a fact finding, is that a legal question for us to review? Or is that something else? I, I think, well, there's, it loops into a couple of things, Your Honor. I have a couple of things to say about that. And one thing is, I think, before you even get to that, another reason you can affirm in this case is regardless of what the district court stated or what it found, is that the district court had found that the defendant gave, provided information about J.A., the person that received the cocaine that gave it on to the defendant in Crawfordville. And if the district court found that the defendant provided information about the people he distributed the cocaine in Crawfordville to, if the district court had found that, that would be clearly erroneous because there's no evidence in the record of that. So the only ruling that could have been correctly made on this case is a ruling that he was not entitled to safety valve relief. So that's one thing. Another thing that may help answer your question before I get to it directly, Your Honor, is, is this court can infer factual findings that are consistent with the order being reviewed on appeal. A case that holds that is Hightower v. Terry, 459 F. 3rd at 1072 footnote 9. And it cites another case in that footnote that holds the same thing. And then getting more specific to your question, I think it is just a matter of reading the record and determining what he found. And as I said, I think he found it four times and that's the only reasonable way to read the record. But again, even if he didn't find that, a finding that this defendant met the safety valve would be clearly erroneous because there's no evidence he provided information to JA, the person in Crawfordville that received the packages of cocaine that he picked up. There's no evidence he provided information about who he distributed the cocaine to. And I think that gets back to my burden of proof theme at the start of this oral argument, Your Honor. A defendant just can't walk. Usually the government's got the burden of proof. And that's what we hear about a lot, especially at trials, which is fine because we have it. But this case, the shoe's on the other foot. It's on him. And he can't just hand a one-page letter to the district court and say, oh, I've done all I can. I've told everything I did. I mean, he didn't do that here. And you can tell just by looking at the record, the only reasonable interpret, the only non-clearly erroneous finding you could have is he didn't meet safety valve. So that's my ultimate fallback position, Your Honor. But getting into the district court's findings, the district court did find, as I said, four times that he did not tell the government all the information he had. And I, as I quoted three, and I mean, it's not that long of a transcript. It's pages 28 to 32. I think it says what it says. And I think you should affirm the district court on that basis. What about, what about Ms. Salant's argument that those findings were infected or, um, or, um, you know, they were, they were problematic in light of the district court's earlier legal ruling? I just think that's completely wrong. I mean, district judges, even this court too, but I mean, district judges make alternative findings all the time. And that's what he did here. I think that's, I mean, the government's position is that's the only way to reasonably interpret this record. I mean, I don't think this is, respectfully, I don't think this is a close case. I mean, if you read pages 28 to 34 of the sentencing transcript, he says it over and over four different times. I mean, he asked the government, you know, government, aren't you saying even if you could fix it, he didn't fix it? You know, that's correct, your honor. Then again, that's at page 28. Then again, at page 30, you know, government, you're saying we don't believe this letter exhibit one fixes it. It's not, it's still not a complete recitation of all the information within the plain language of the safety valve. And our AUSA responds, your honor, that's absolutely correct. And then you've got the two statements at page 33 that I've discussed that are at page 33 that Judge Newsom discussed. I mean, I just think that's the way to interpret the record, your honor. Was his letter, Mr. Davies, translated into English? Not at the sentencing hearing. Ms. Salant supplemented the record with that after the sentencing hearing was over. There's an English translation in the record. So what he, in his letter, and I'm looking at the Spanish version, but in his letter, he tells you the amount that was involved in the other two shipments, 10 ounces in the first one, half a kilogram in the second one. And he says that he sold both of them on the street to traffickers in Tallahassee. What else would you have wanted to know? Three things, your honor. I mean, the safety valve, as I've discussed, is a tell-all provision. The evidence, the undisputed portion of the PSR, paragraph 41, which was not objected to, so you take it as true, says that when the cocaine got delivered to Crawfordville, the woman was there and they dealt with the woman. And she said multiple packages had been received there and her husband, J.A., knew about them. Then the agents put the package of cocaine back on this porch. J.A. comes and brings it inside. The defendant comes by, sees the police there, and leaves. He didn't tell us. So it's three things that answer your question, your honor. Number one, he didn't tell us anything about J.A. So that alone, standing alone, means you should affirm the district. What if J.A.'s not involved? But your honor, the woman said that, I mean, and it's undisputed, because they didn't object to the PSR, that J.A. knew about it, and then you've got J.A.'s action. No, but J.A. knew about what? He knew about packages, but there's no evidence, and I'm not saying you have the burden, but there's no evidence on your side that shows that J.A. knew the content of the packages. He put out the packages, but there's nothing to say that he knew what was in them. Well, I mean, I think that's a reasonable inference from the evidence, and again, this gets back to my theme that the burden of proof is his. And I mean, you've got the woman saying her husband knows about it, and then her husband comes and picks up the packages and brings it inside, and the police are there, and then when the defendant sees the police, he leaves. So, I mean, I think that is sufficient for him to have to tell us something about J.A. Okay, what else? That's point number one. What else is missing? Point number two is he didn't tell us about who he distributed the cocaine to. He just vaguely says, I gave it to other people. I mean, he doesn't... What if he doesn't know the name of those people? Well, again, I think you get into burden of proof, Your Honor. I mean... But what if he tells you, I don't know the name of the people I've sold the drugs to on the streets of Tallahassee? What's your response? Well, I guess we press him a little more, and how can you not know a single person you sold to, especially when you're dealing with this quantity? You know, I think my theme, again, Your Honor, is it's his burden, and he didn't tell us, he didn't, he just makes a vague statement, he didn't tell us who he told to. My third point, Your Honor, is the woman said there were multiple packages, and I think this is important, given that it's his burden of proof, because he only told us about two packages. The woman said they were multiple, and AUSA made a representation that there were three, and Ms. Salant says, well, that wasn't evidence, and fine, but let's look at multiple, Your Honor, and we're talking about Wakulla, Florida, and the defendants got the burden of proof, and in northern Florida, like in Alabama, generally, if someone means two, they'll say two, or they'll say a couple. A few or multiple means three or more, and it's his burden to establish that it's more likely than not that multiple meant only two, and he hasn't done that. You provided these local dictionary meetings to the district court, and told the district judge that multiple could not mean only two? I think the judge would know that, since he's in Tallahassee, Your Honor, but my point, again- And he would also know what Mr. Meissanet, who's speaking in Spanish, would say? Well, that's Mr., Your Honor, respectfully, that's Mr. Meissanet's problem, because he's the burden of proof. I really think this, like I started out, when I started my oral argument, I started to go directly to answer Judge Brasher's question, and I stuck with my original little opening statement, because I think it's so important. I think this whole case turns on the burden of proof, and the safety valve provision gives a defendant a huge break, and he's got to come in and do all he can, and tell everything he knows to meet it, and I think in this case, the defendant has not met his burden of proof. Can I ask you a question on the legal argument? I mean, I think we all agree the district court made a legal ruling. Isn't the district court's legal ruling inconsistent with the text of the statute, and specifically this? The statute says that the, I'm going to quote it, the fact that the defendant has no relevant or useful other information to provide, or that the government is already aware of the information, shall not preclude a determination by the court that the defendant has complied with this requirement, so it says in there that even if the government knows the information already, you can still meet the safety valve. I don't, I'm not disagreeing with you. It's a close issue, your honor, but I don't think that what you just asked undercuts itself, undercuts the district court's ruling. The basis for the district court's ruling, and he talked about it for a little bit before he made it, so I mean, you really need to read the sentencing transcript from about page 8 to about page 22, and then page 33, but the basis for the district court's ruling is the word provide, and the defendant has to quote provide the government with the information that he had, and I guess one way of looking at it is, if I get a hundred dollars, if I provide you with water, and I give you a container of water that you haven't opened, I haven't provided you with water, and similarly, the district court was saying, well, he hasn't provided it because he only admitted it after he got caught, and you had to drag it, drag it out of him, so that's not providing it. It's removing it from him. That's the basis for the district court's ruling, your honor, and I understand, I mean, I think that's a close issue. I mean, let me, let me ask you this, though, and I mean, I'm sure you're much more familiar with me than me on this issue, but doesn't the government often in these proffer sessions confront a defendant with evidence that they have, the defendant's illegal activity, and say, look, you know, this is what we know, and you know, we think this, and whatnot. I mean, isn't that the way these proffers go? I mean, I, I don't, I'm not super familiar with this, but it seems unlikely that the defendant shows up and never gets asked any questions and just stands there and gives a monologue. That's true, your honor, and if you read the sentencing transcript, the district court had just addressed that. My memory is the district court just addressed that, that this is something even worse. This is not just the defendant hedging or hemming and hawing while he's talking to the government. This is the government directly lying to the government saying, I've, I've, this is the information. Then, meanwhile, he's going behind the government's back and continuing to deal cocaine. Yeah, but, but I guess, and that's, this is where it just seems like this, as a legal determination, I understand as a factual determination, the district court could say, look, this had to be drug out of him. You know, I, I don't even think he, he's not being honest with the government. It seems highly unlikely to me that he's provided them all the information. I can understand that from a factual determination, but I'm trying to, it looks like, I guess, it seems like we're asking the word provide, the action word provide to do a lot of work here that it seems like it doesn't do in the normal proper session. In a normal proper session, that's probably, that's true. But I mean, I think this case is, is different. And Judge Frasher, my best point on the, on the, on that, on this whole issue, the legal issue, I would just say, before you make up your mind, for sure, I would, I would ask you if you haven't already done it. I mean, the district court gave a lot of analysis to it. I mean, he, he went through it at pages 18 through 22 of the 23. Let me ask, let me ask one more question on this, just because I, I'm actually unclear. I mean, I've read the transcript, but I'm actually unclear, like, what do you think, the district court, I think you're right, recognize that there are certain circumstances where the government's going to be confronting someone with something, pulling the information out of them, and okay, that's still provide, but this is not provide. What do you see the district court's legal determination to actually be? Like, what do you think the district court said, this is the legal standard required by the statute, and he didn't meet that standard? Like, what do you think it is? Well, the district court, I think, used the word perverse one or two times, and then I know at page 20 of the sentencing transcript, the defendant said, if this legally, talking about the ruling we're talking about now, not the alternative ruling, but the district court said, if this is the law, it will turn the safety valve on its head. It just seemed completely illogical, and totally against the spirit of the safety valve to give a safety valve relief in a situation where the defendant continued to deal drugs after he pled guilty, and then only told. Why isn't that, why doesn't that go to the fact, to whether the district court can, I mean, I agree with the district court that that would be perverse, but the district court has, one, the ability to make fact findings, so the district court could say, in light of your lies throughout the proffer session and continuing legal activity, I find, as a matter of fact, that you're not credible. I don't think you have, given all the information to the government. District court could say that, or the district court could say, I find you've done all that. You've been truthful. I'm still not giving you a safety valve sentence because I'm going to vary upward and give you a higher sentence. You could use a sentencing discretion to do that. I guess I'm trying to figure out why the perversity of giving the person a lower sentence leads to a legal determination that that sentence is not available to the district court at all. Let me ask you this hypothetical. Let's assume the government had come in and said, we completely support safety valve relief. We think that he was completely honest with us. After we caught him the second time, we think he was completely honest with us. He's, in fact, identified people. We've gone and caught additional people because he was so friendly and helpful to us. It seems like under district court's reasoning, the district court would not be able to give him safety valve relief because he had previously lied to the government and they had confronted him with it, right? That's the district court's reasoning. He's statutorily ineligible for the safety valve. I think that's true, but in your hypothetical, the government would file a 5k1 or a rule 35 form and the district court could get around the mandatory minimum. Yeah, but wouldn't that be a perverse reading of the statute that he could cooperate all day long after being caught in the second crime, and yet he's ineligible for a safety valve? Statutorily ineligible? I don't think it would be, Your Honor. I really don't. I think the safety valve and substantial assistance are not exactly the same thing. I mean, the safety valve is something he's got to do himself, and he's got to do a lot to get it. And I mean, I think there is something to the district court's first ruling, which is my second argument in my brief. I mean, I did cite that district court of Pennsylvania case that says the district court got it right, although I mean, I totally understand a district court from Pennsylvania is not binding on you all. But I think there's something to it. I think it's a very close issue. I think my first argument is my stronger argument. That's why I put my first argument first in my brief and put my second argument second. But I do think there is something to the second argument. And I mean, the government's position is that the defendants, what I have is the district court's second reason, what the district court has as its first reason. The government's position is that that was correct, and you can affirm on that basis. I understand you're skeptical about that, Judge Brasher, and I understand it's a close question, but we think you should affirm for both bases. It's not just the first one in my brief. Well, he may not be the only one who's skeptical about that other legal issue. I get that, Your Honor. In part because you seem, and you may be right and I may be wrong, but you seem to be equating safety valve with acceptance of responsibility. And now, although those two circles overlap a little bit, they're not one and the same. In other words, through your repeated misconduct, your repeated lies, your repeated obstruction, you can be denied acceptance. But if at the end of the day, before the sentencing hearing, you disclose everything, the district judge has discretion to give you a safety valve sentence. But we'll certainly take a look at the legal issue too. So thank you very much, Mr. Davies. We appreciate it. Mr. Davies made mention of the fact that in the sentencing transcript, the court made the determination four times that Mr. Masonette was not completely truthful. The court also stated four different times in the transcript that it was basing its decision on a legal matter as a matter of law, that because Mr. Masonette had committed these offenses after his proffer and did not come forward until he was caught, that that was reason he was ineligible for safety valve. Why just so I understand, because I guess sort of we're all cards on the table, I'm pretty skeptical of the government's legal position or sort of as a matter of law position as well. But I mean, in the passage that I was asking Mr. Davies, or maybe I was asking you about earlier, I mean, the district court does use the word bind, you know, so as to whether or not the district court made a finding, it seems to me the district court told us that it was making a finding. And then I guess I read the multiple references to this being secondary or a secondary basis or secondarily and not determinative, most plausibly, again, in the context of this kind of clumsy oral colloquy, to be sort of a standalone basis in any event. Why is that not the most reasonable reading of what happened? I understand that strategically, it's helpful for you, because the district, sorry, because the government's and the district court's legal position is tenuous. It makes sense for you to want to sort of tie them together so that you can make your argument about infection. But why is it not more reasonable, given sort of the totality of the colloquy to for us to conclude that the district court was doing sort of two different things, one of which may have been kooky, and the other of which may Right. Well, I think first of all, I don't think that the government or I'm sorry, the district court's reasoning was tenuous. I think that it was completely in contradiction with what this court said in Brownlee. I mean, the court says material omission is the same as a lie, and therefore you are not eligible. But as far as whether or not this court can take this secondary finding that Mr. Masonette was not entirely truthful, I don't, if that were the case, then the government, then we, the judge never would have had to address the issue of whether or not committing these crimes while he was on pretrial release after he had proffered. Yeah, I mean, I get it. Yeah, I understand. And listen, no one is less a fan of alternative holdings than me. But it feels to me, this just sort of feels to me like a standard issue garden variety alternative holding situation where the district court didn't really need to say either of these two things, said them both, belt and suspenders, so as maybe to reverse proof itself. So I think you're right, that it didn't really need to say both. But that, of course, the arrow can run in either direction. It could be that he really didn't need to say the legal thing at all, because he said the factual thing, right? Well, I think the reading of the complete transcript up until, you know, I don't know, the maybe page 35 shows that the court's focus was whether or not these crimes that he committed while on pretrial release precluded him from getting safety valve. So that's what, that was the government's objection at the start of the sentencing. And I think that it's clear that that is, that was the bedrock of the district court's decision. Do we have, do we have a copy of Mr. Masonette's initial proffer statement somewhere or a summary of it somewhere in the record or no? We do not. So all of Mr. Masonette's proffers happened before he was charged federally, which is, which is an interesting point. So his, the last proffer that I was able to find evidence of, and I only got it because I asked a state public defender investigator, not because we have it in the record, was that his last proffer with the state, which is the only proffer that we have evidence of, was in December of 2020. So he met with, as far as I understood, he met with the state multiple times. He proffered, he proffered, he proffered. It ended at 2020. 10 months later, Mr. Masonette, out of fear for his family's financial stability, commits another crime. And then a month later commits another crime. So it's, it seems unreasonable to say that he should have told them in December of 2020. No, no, I get, I get, I get all of that. My, my only question is a record question, and that is, how are we supposed to, let's say that Judge Newsom is right, that these are alternative decisions, one legal, one factual. How are we supposed to gauge the correctness of the factual determination if we don't have a copy of his first proffer in the record in any way, shape, or form? And isn't it Mr. Masonette's burden to put that in front of the district court so that the district court can see whether he has come and given the government all the information at his disposal? I mean, we have nothing, we, and the reason I'm asking this is not merely theoretical. For example, if in the first proffer session, Mr. Masonette had said that J.A. had never been told about the content of the packages, and he was being used as a dupe just to pick these things up and take them from one place to another, but he was always kept out of the loop, he was never told what was in them, it makes sense to think that the same sort of scheme progressed in the same way with the later transactions. If in his first proffer he said, I don't know the names of the people I sold the cocaine to, or I was going to sell the cocaine to, again, there's an inference at least that nothing had changed by the time of the later transactions. But if he had said something different about either of those things in his first proffer session, you might expect some more information from the second letter. And at least for me, there's nothing to compare one to. Sure. I think that it was everybody's understanding until Mr. Masonette committed these two other offenses, that not only was the federal government willing to consider safety valve, but they were also considering acceptance in a 5k. So I don't think that anybody came into the sentencing thinking that what was said before in his previous proffers was something that was going to be determinative of what he said in his letter that he wrote after being caught for the two other offenses. Can I ask one more question about, just to follow up on Judge Jordan's questions, is given the state of the record does, and let's put the legal ruling to one side and address what may be an alternative ruling, does that alternative ruling all come down to the completeness of this Spanish language statement that he offered the judge at the hearing? Is that the thing we shouldn't be examining? Yes. And with the record, my office doesn't have anything else in their possession about his proffers to the state attorney. Right. So if I were a district judge and you're at sentencing and someone, the defendant shows up and says, I would like to be eligible for safety valve. I am now prepared to give you all the information that I have. Can the judge just say, you know what, like this is late. I don't speak Spanish. You're supposed to provide this to the government and not to me. And I have no way of addressing or assessing whether this is accurate. Can a judge say that? Well, I'm not sure. So the, you know, we were talking about the difference between someone mentioned the 5k and the safety valve with the safety valve. The ultimate decision is on the judge. Whereas with the 5k, the government is the one who has to present it to the court to say, we want this person or, you know, we, we support this. But I guess my point is doesn't, doesn't the safety valve require you to provide the information to the government? Okay. Correct. Right. But I, but we're, but, but once we are before the court, the court has, and if there's a disagreement about whether or not the record is incomplete there, the defendant can't prove a negative. He can't prove that he didn't. I mean, he can't prove that he wasn't involved in something beyond just saying, I wasn't involved in it. Yeah. I guess my question is, it just seems like what happened here is there were these proper sessions. And then for whatever reason, the government changed his mind, let's say on, on agreeing to the safety valve. And instead of having another proper session with the government, perhaps the government said we didn't want one. That is what happened. Okay. Then he just shows up to the district court and says, I'll just give you the information, not the government. Right. I guess, don't we have case law that says the government doesn't have to give you a second opportunity to proffer? That's correct. The government does not have to give you a second. So then, so then wouldn't, wouldn't just showing up and telling the district court, the information with like the government present, wouldn't that basically just be requiring the government to accept that as a second opportunity to proffer? I mean, I guess the judge could do that, but I, but I think what's important is that the, the judge needs, the judge needs to make the decision if the defendant meets the statutory requirements. And so if the, if the judge, if the, if the defendant has provided the government with the necessary information and the government just says, no, he hasn't, then it's the judge's job to decide which, which, which he thinks, what he thinks is more credible. This previously, this court held in the, sorry, I'm just the Mansilla Ibarra. They, you know, the government even presented a witness to try and refute to the defendants, the defendants proffer. And the court said that, that, that's not enough. I mean, because that witness, he did not think was, was credible because he was not an actual witness. He was a hearsay witness. So I do think that, I mean, the, the, the government is not required to accept your proffer, but just because the government doesn't accept it doesn't mean that you're ineligible for safety valve. All right. So long. Thank you very much, Mr. Davies. Thank you both very much. We appreciate it. Thank you. Have a nice day. Bye-bye. Thank you, your honor.